1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    AARON ATLEE PARSONS,                    Case No.  14-cv-04674-HSG

            Plaintiff,
8                                            ORDER GRANTING DEFENDANTS'
                                             MOTION TO DISMISS; DENYING AS
9         v.                                 MOOT PLAINTIFF'S SUMMARY
                                             JUDGMENT MOTION; DISMISSING
     ALAMEDA COUNTY SHERIFF                  JUDITH BROWNE
10   DEPARTMENT, et al.,
                                             Re: Dkt. Nos. 22, 27
11          Defendants.

12

13                                INTRODUCTION

14        Plaintiff, a California prisoner currently incarcerated at Mule Creek State Prison, filed this

15   *pro se* civil rights action under 42 U.S.C. § 1983.  The Court found that, liberally construed, the

16   first amended complaint stated the following cognizable claims: (1) Alameda County;[1] district

17   attorneys Elgin Lowe, Amilcar Ford, and Terry Wiley; and Alameda County Sheriff's deputy

18   Turner were deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment;[2]

19   _____

20   [1] Because the Alameda County Sheriff's Office and the Alameda County District Attorney's
     Office are municipal entities of Alameda County, the Court uses "Alameda County" to refer to the
21   named defendants Alameda County, Alameda County Sheriff's Office, and Alameda County
     District Attorney's Office.
22   [2] According to Plaintiff's allegations, Plaintiff's status changed from pretrial detainee to prisoner
     during the relevant time period.  Plaintiff claims Defendants conspired to defraud him of his plea
23   bargain contract with the Alameda County District Attorney's Office, in deliberate indifference to
     Plaintiff's safety.  Plaintiff claims that Defendants entered in this conspiracy in mid-2008, when
24   he was still a pretrial detainee, and that the conspiracy ended in 2013, by which time he had been
     convicted and sentenced.  As a pretrial detainee, Plaintiff would have been protected from
25   punishment without due process under the Due Process Clause of the Fourteenth Amendment.  *See
     Bell v. Wolfish*, 441 U.S. 520, 535, 536 & n.16 (1979).  After his conviction, as a prisoner,
26   Plaintiff is protected from cruel and unusual punishment under the Eighth Amendment.  *See id.* at
     536 n.16; *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (Eighth Amendment requires that
27   prison officials take reasonable measures to guarantee the safety of prisoners).  Because the Court
     dismisses Plaintiff's claims on statute of limitations grounds, the Court declines to address
28   whether Plaintiff's claims are properly analyzed under the Eighth Amendment or the Fourteenth
     Amendment.

United States District Court
Northern District of California

1    and (2) public defender Judith Browne and Alameda County conspired with the other defendants

2    to endanger him in violation of his constitutional rights.  *See* Docket No. 13 at 3–4.  Defendants

3    Alameda County, Deputy Turner, and DAs Lowe, Wiley, and Ford (collectively, "Defendants")

4    have filed a motion to dismiss.  Docket No. 22.  The other remaining defendant, Judith Browne,

5    has not yet been served in this action.  *See* Docket No. 24 (unexecuted summons).  For the reasons

6    set forth below, Defendants' motion to dismiss (Docket No. 22) is GRANTED; Plaintiff's

7    summary judgment motion (Docket No. 27) is DISMISSED as moot; and Judith Browne is

8    DISMISSED from this action without prejudice.

9                                              **BACKGROUND**

10          The following facts are based on the allegations in the first amended complaint ("FAC").

11   Because the timeline of events is not completely clear from the FAC, the Court divides Plaintiff's

12   allegations into three categories: negotiating a plea/cooperation agreement; harassment at Santa

13   Rita Jail; and harassment at San Quentin State Prison and Mule Creek State Prison.

14          **Negotiating a Plea/Cooperation Agreement.**  In 2008, Plaintiff was incarcerated at Santa

15   Rita Jail and awaiting trial.  Sometime in 2008, a fellow prisoner, Douglas Evans, made

16   admissions to Plaintiff regarding the murders for which Evans had been charged and which were

17   unrelated to Plaintiff's charged crimes.  Docket No. 11 ("FAC") at 3, 5, and 20.  Plaintiff indicated

18   to the Alameda County District Attorney's Office ("DA's Office") that he was willing to testify

19   regarding Evans' statements in return for a favorable plea bargain.  *Id.* at 21–23.

20          On September 2, 2008,[3] Deputy District Attorney Lowe met with Plaintiff and asked him

21   to be a prosecution witness in the upcoming trial against Evans.  FAC at 4.  DA Lowe informed

22   Plaintiff that he would not negotiate a plea/cooperation agreement with Plaintiff unless Plaintiff

23   retained an attorney.  *Id.*  Plaintiff asked DA Lowe to place him in witness protection or federal

24   lockup, but DA Lowe refused.  *Id.*

25          In early 2009, Judith Browne was appointed to serve as Plaintiff's public defender.  FAC at

26

27   ───────────────
     [3] The FAC states that this incident took place on September 2, 2009.  The Court presumes the year
28   to be a typographical error because the plea bargain had already been withdrawn by July 2009.
     FAC at 22.

4 and 20.  Plaintiff informed Browne that he had requested counsel in order to negotiate a plea agreement with DA Lowe in exchange for his testimony against Evans.  *Id.* at 20.  Browne advised Plaintiff to "cooperate in every fashion."  *Id.* at 5.  Plaintiff participated in numerous interviews with DA Lowe and Detective Godelwiskie.  *Id.*  Browne and DA Lowe agreed that, in exchange for his testimony at Evans' trial, Plaintiff would receive a sentence of six years in state prison with two strikes, with a paper commitment and no physical custody.  *Id.* at 8 and 22.

Evans eventually pled guilty to manslaughter.  FAC at 7 and 23.  DA Lowe re-affirmed that Plaintiff would still receive the agreed-upon plea deal.  *Id.* at 8.

Browne attempted several times to set court dates to enter the plea bargain, but DA Lowe was always unavailable.  FAC at 8 and 22.  Finally, Browne was contacted by either DA Lowe or Deputy District Attorney Wiley and informed that the DA's Office was withdrawing the plea agreement because Plaintiff's victim was angry about the deal.  *Id.* at 8–9 and 22.  After DA Wiley withdrew the plea agreement, Browne successfully brought a motion to enforce the plea agreement.  *Id.* at 8.  Judge Kurtz ordered the DA's Office to re-offer the original plea agreement. *Id.*

On March 5, 2010, Judge Kevin Murphy accepted Plaintiff's plea agreement and dismissed the remaining charges pursuant to a motion to dismiss filed by Deputy District Attorney Amilcar Ford.  FAC at 8 and 29–30.  Plaintiff's sentencing was set for May 20, 2010.  *Id.* at 8.  Judge Murphy then recused himself and Plaintiff's sentencing hearing was instead heard before Judge Jacobson.  *Id.* at 8–9.  Both Browne and Byron stipulated that Judge Murphy had recused himself. *Id.* at 14.  Judge Jacobson refused to enforce the plea agreement and offered Plaintiff the choice of a fourteen-year sentence or going to trial.  *Id.* at 9.  Plaintiff declined both options.  *Id.*  The sentencing hearing was continued to a later date.  *Id.*  At that later date, DA Ford informed Plaintiff that the original plea agreement was not in the best interest of society.  *Id.* at 10.  DA Ford filed a motion to reinstate all the charges that had been dismissed pursuant to the plea agreement, and the motion was granted.  *Id.*  During this hearing, Browne announced her retirement from law practice, and David J. Byron was appointed to represent Plaintiff.  *Id.*

Plaintiff refused to participate in his trial and was convicted "in absentia" and sentenced to

forty-two years to life in state prison.  FAC at 10.

**Harassment at Santa Rita Jail**.  Plaintiff was incarcerated at Santa Rita Jail from mid-2008 to September 29, 2010, when he was transferred to San Quentin State Prison to start serving his sentence.  While incarcerated at Santa Rita Jail and prior to meeting with DA Lowe on September 2, 2008, Plaintiff was taken to the courthouse to testify in the preliminary hearing in the Evans case.   FAC at 3 and 23.   Plaintiff refused to testify until he could retain a defense lawyer.  *Id.* at 3.  Plaintiff's statements were introduced at the preliminary hearing by a law enforcement officer pursuant to the hearsay exception set forth in section 872(a) of the California Penal Code.[4]  *Id.* at 3.

Plaintiff was transported back from the preliminary hearing on the same bus as Evans.  FAC at 3 and 23.  Plaintiff informed Deputy Turner that he was serving as a witness against Evans.  *Id.* at 3.  Deputy Turner responded by telling Plaintiff to "shut up sit down."  *Id.*  While on the bus, Evans told Plaintiff that he was aware that Plaintiff was testifying against him and threatened to kill Plaintiff.  *Id.* at 3 and 23.

At some point following this encounter with Evans, Plaintiff started to receive death threats from various gangs.  FAC at 3.  The Acorn Mob, of which Evans is a member, put out a "'profit' 'hit'" on Plaintiff.  *Id.* at 3 and 25–27.  Plaintiff's mother began to receive threatening phone calls wherein she was warned that Plaintiff should "keep his mouth shut."  *Id.* at 4.  Because Plaintiff was known as a "snitch," he was housed in isolation at Santa Rita Jail and monitored by the gang unit.  *Id.* at 3.  Plaintiff received "kites" (notes) in his cell door's tray slot that threatened him, his mother, and his son.  *Id.* at 6.  Plaintiff requested that the DA's Office provide him and his mother with protection, but his requests were denied.  *Id.* at 5.

Throughout 2009, Plaintiff continued to be harassed and threatened.  Plaintiff's mail was consistently tampered with.  FAC at 6.  At one point, Alameda County deputies ordered Plaintiff

---

[4] Plaintiff appears to be referring to statements that he made to a law enforcement officer regarding Evans' admissions, possibly when he first approached the DA's Office about testifying. Section 872(a) of the California Penal Code allows a probable cause finding to be based upon a law enforcement officer's sworn testimony as to out-of-court statements made by others.  *See* Cal. Penal Code § 872(a).  These statements are offered for the truth of the matter asserted.  *Id.*

*United States District Court*
*Northern District of California*

to "cuff up" and escorted him from his cell to a locked visiting booth.  *Id.* at 6.  Plaintiff was left in the booth handcuffed and was visited by Candler,[5] the head of the Acorn Mob gang, and Yusef Bey, a Black Muslim leader, both of whom were fellow inmates.  *Id.*  Plaintiff was separated from Candler and Bey by a locked door with thick glass.  *Id.* at 7.  Plaintiff informed the deputies that there was an order requiring that he be kept away from Candler and Bey, but the deputies left him in the booth.  *Id.* at 6.  Candler and Bey told Plaintiff, "If we don't get you in here, well (sic) get your ass in prison."  *Id.* at 7.  Plaintiff informed Browne and DA Lowe about the threats and again requested protective measures.  *Id.* at 4, 5 and 7.  DA Lowe ignored these requests.  *Id.* at 5.  One morning, Plaintiff's cell door was unlocked at 3 a.m. and two inmates entered and beat Plaintiff in the head and back until he lost consciousness.  *Id.* at 7.  Plaintiff was directed by a deputy to write a statement claiming that he had injured himself.  *Id.*  Plaintiff did so because he feared that he would otherwise be attacked again.  *Id.*

**Harassment at San Quentin State Prison and Mule Creek State Prison.**  On or about September 21, 2010, Plaintiff was transported to San Quentin State Prison to start serving his sentence.  FAC at 10.  One morning at 4:40 a.m., two unidentified corrections officers whose faces were obscured by kerchiefs, shades, and caps, unlocked Plaintiff's cell door and left.  Plaintiff's cellmate tied the cell door shut with bed sheets.  *Id.* at 11.  About an hour later, mainline prisoners began walking towards Plaintiff's cell on their way to the shower.  *Id.*  Southern Mexican gang members unsuccessfully tried to pull Plaintiff's cell door open as they called out "rattas" or "rat."  Plaintiff believed that he would be killed.  *Id.*

On or about 2013, Plaintiff was transferred to Mule Creek State Prison in Ione, California.  FAC at 11.  At Mule Creek State Prison, Plaintiff was stabbed in the face by a gang member.  *Id.*  Prison gang investigators investigated the attack and informed Plaintiff of their findings.  Specifically, the investigators found that there were plans to kill Plaintiff; that Plaintiff had been improperly housed on a Level-4 yard despite being a Level-3 prisoner, and that it was almost impossible to stop the plans to kill Plaintiff.  *Id.* at 12.  The investigators also cautioned Plaintiff

---

[5] Plaintiff does not provide a first name for Candler.

1 that he should not retain court documents referencing the prison hit, and that if he became too

2 much of a liability, he would be transferred to another prison that would not be as safe as Mule

3 Creek State Prison.  *Id.*

4       Plaintiff filed the instant action on October 11, 2014,[6] alleging that all defendants

5 conspired to defraud him of his lawful contract with the DA's Office; that all defendants had been

6 deliberately, maliciously, and knowingly indifferent to his safety; and that all defendants were

7 aware that breaching the plea agreement would place Plaintiff in "mortal danger."  *See* Docket No.

8 1 at 13.

9 **DISCUSSION**

10 **I.      Standard of Review**

11       Under Fed. R. Civ. P. 12(b)(6), the Court must dismiss a complaint if a plaintiff can prove

12 no set of facts in support of his claim which would entitle him to relief.  *Sprewell v. Golden State*

13 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  In deciding a motion to dismiss, the Court accepts as

14 true all material allegations in the complaint and construes them in the light most favorable to the

15 plaintiff.  *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002).  However,

16 conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

17 dismiss.  *Associated Gen. Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998)

18 (citing *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)).  When a complaint is dismissed for

19

20 _____

21 [6] Plaintiff claims that under the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to the court, *see Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003), his complaint should be considered filed as of October 3, 2014.  *See* Docket No. 33 at 5.  There is nothing in the record that indicates that the complaint was given to prison officials on October 3, 2014.

23     The signature page of the complaint contradicts Plaintiff's assertion.  On the signature page of the complaint, Plaintiff filled out the date to indicate that the complaint was signed "this 10 day of 11, 2014."  *See* Docket No. 1 at 7.  The Court presumes that this was a typographical error by Plaintiff, and that he meant to indicate that he signed the complaint on October 11, 2014. According to the notation on the envelope containing the complaint, Correctional Officer S. Taylor received the legal mail on October 12, 2014.  *See* Docket No. 1-1 at 2.  The postage stamp on the envelope indicates that the complaint was mailed on October 13, 2014.  *See id.* at 1.  The complaint was stamped "received" by the Court on October 16, 2014, and "filed" on October 20, 2014.  *See id.*

27     Assuming that Plaintiff signed the complaint on October 11, 2014, and handed it to prison officials that same day to mail to the court, Plaintiff's complaint is deemed filed as of October 11, 2014, under the most favorable application of the prisoner mailbox rule.

United States District Court
Northern District of California

failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). *Pro se* pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## II.    Analysis

Defendants have moved to dismiss the FAC on the grounds that (1) it is time-barred under the relevant statute of limitations; (2) DAs Lowe, Ford, and Wiley are entitled to absolute or qualified immunity; and (3) Plaintiff has failed to allege sufficient facts to state a claim against the County of Alameda; and against DAs Wiley and Ford.  For the reasons set forth below, the Court finds that Plaintiff's claims are time-barred under the relevant statute of limitations.  In light of this finding, the Court declines to address whether DAs Lowe, Ford, and Wiley are entitled to absolute or qualified immunity, whether Plaintiff has alleged sufficient facts to state a claim against the County of Alameda, and whether Plaintiff has alleged sufficient facts to state a claim against DAs Wiley and Ford.

### A.    Timeliness

Defendants argue that Plaintiff's claims are time-barred by the applicable statute of limitations.  The parties agree that Plaintiff had four years to bring a § 1983 claim for damages in California[7] (two years of tolling[8] followed by the two-year statute of limitations[9]).  The question,

---

[7] Section 1983 does not contain its own limitations period.  "Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citing *Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985), *superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78 (2004)).

[8] A federal court must also give effect to a state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 538, 544 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419–20 (9th Cir. 1986).  Section 352.1 of the California Code of Civil Procedure tolls the statute of limitations for the time that the person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life . . . not to exceed two years." *See* Cal. Civ. Proc. Code § 352.1(a).

[9] In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at section 335.1 of the California Code of Civil Procedure.  Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which is now two years; enacted in 2002).  Section 335.1 therefore sets forth the applicable statute of limitations for § 1983 actions

United States District Court
Northern District of California

1   therefore, is when Plaintiff's claims accrued.  Defendants argue that Plaintiff's claims accrued at

2   the latest by September 21, 2010, when Plaintiff was sent to state prison following his conviction,

3   and that the applicable statute of limitations therefore expired on September 21, 2014.  In his

4   opposition, Plaintiff argues that his claims against DAs Lowe, Wiley, and Ford accrued when he

5   was attacked in state prison in 2012.  Plaintiff does not provide the specific date of this attack in

6   the FAC.[10]  Construing the FAC in the light most favorable to Plaintiff, the Court presumes that

7   the attack took place on December 31, 2012, meaning that if his claim accrued on that date, the

8   applicable statute of limitations would expire on December 31, 2016.  Plaintiff does not directly

9   address the timeliness of his claims against Deputy Turner and Alameda County.

10          In reviewing a § 1983 claim for damages, it is federal law that determines when a cause of

11   action accrues and the statute of limitations begins to run.  *Wallace v. Kato*, 549 U.S. 384, 388

12   (2007); *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015).  Under federal law, a claim

13   generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of

14   the action.  *See TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999) (citing *Kimes v. Stone*,

15   84 F.3d 1121, 1128 (9th Cir. 1996)); *Elliott v. City of Union City*, 25 F.3d 800, 802 (1994) (citing

16   *Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986)).  But accrual

17   ultimately depends on the substantive basis of the claim.  *See, e.g.*, *Bradford v. Scherschligt*, 803

18   F.3d 382, 387–89 (9th Cir. 2015) (a claim for deliberate fabrication of evidence accrues when the

19   charges are fully and finally resolved and can no longer be brought against the defendant; here, the

20   acquittal at the retrial); *Belanus*, 796 F.3d at 1026–27 (cause of action for illegal search and

21   seizure accrues when the wrongful act occurs, even if person does not know at that time the search

22   was warrantless); *Pouncil v. Tilton*, 704 F.3d 568, 579 (9th Cir. 2012) (claim that prison

---

brought in California.  *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (applying
California's prior one-year statute of limitations to the § 1983 action).

[10] The Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6)
motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Americopters,
LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006) (indicating that, for a Rule 12(b)(6) motion, a
district court is "confined by the facts contained in the four corners of the complaint").  Plaintiff
has attached exhibits to his opposition to the motion to dismiss that indicate that he was attacked
in prison on December 5, 2012.  *See* Docket No. 33 at 16.  The Court does not consider these new
facts raised in Plaintiff's opposition, except in determining whether leave to amend should be
granted.

United States District Court
Northern District of California

1    unlawfully denied prisoner conjugal visits with his second wife in 2008 pursuant to a 1996

2    regulation was timely because it was an independent, wrongful, and discrete act upon which his

3    claim accrued, notwithstanding prisoner's 2002 administrative grievance complaining of a denial

4    of conjugal visits with his first wife). In this action, the timeliness question turns on whether the

5    claims against each defendant accrued on the date Plaintiff was attacked in state prison, or prior to

6    that date.

7                        1)        Claims against DAs Lowe, Wiley, and Ford

8            Plaintiff alleges that DAs Lowe, Wiley, and Ford were deliberately indifferent to his safety

9    in two ways. First, he alleges that DAs Lowe, Wiley, and Ford refused to protect him from other

10   inmates at Santa Rita Jail, despite Plaintiff's repeated requests for protection. FAC at 4–7.

11   Second, he alleges that DAs Lowe, Wiley and Ford engaged in an ongoing conspiracy "to defraud

12   Plaintiff of his lawfull [sic] [plea bargain] contract," knowing that, upon entering state prison,

13   Plaintiff would be vulnerable to physical attack in retaliation for his willingness to testify against

14   Evans. FAC at 13.

15           The first claim is clearly untimely. It is unclear from Plaintiff's allegations exactly when

16   DAs Lowe, Wiley, and Ford ignored Plaintiff's requests for protection in Santa Rita Jail. Plaintiff

17   left Santa Rita Jail on September 21, 2010 (when he was transferred to San Quentin State Prison,

18   FAC at 10), so this claim accrued by that date at the latest. The statute of limitations therefore ran

19   out, at the latest, on September 21, 2014, over two weeks prior to his filing the instant complaint

20   on October 11, 2014. Plaintiff's claim that DAs Lowe, Wiley and Ford were deliberately

21   indifferent to his safety when they ignored his requests for protection from inmates at Santa Rita

22   Jail is therefore time-barred.

23           Plaintiff's second claim regarding a conspiracy to breach his plea agreement is also

24   untimely. [11] Plaintiff's alleged injury is the deprivation of the sentencing benefit promised in the

25   _____

26   [11] Plaintiff makes additional claims regarding the specifics of the conspiracy in his opposition to
     the motion to dismiss; the Court has not considered these new claims in deciding the motion to
27   dismiss. "The 'new' allegations contained in [Plaintiff's] opposition motion . . . are irrelevant
     for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not*
28   look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to
     a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th

9

United States District Court
Northern District of California

1    plea agreement. Plaintiff learned of this injury when he was sentenced to forty-two years to life in

2    prison, and it was therefore clear that the plea agreement would not be honored. Plaintiff does not

3    provide the date of his sentencing, but it necessarily occurred sometime before he was transferred

4    to San Quentin State Prison on September 21, 2010 to begin serving his sentence. Accordingly,

5    Plaintiff's claims against DAs Lowe, Wiley, and Ford, filed on October 11, 2014, are time-barred

6    on their face. *See TwoRivers*, 174 F.3d at 991–92 (claim accrues "when the plaintiff knows or has

7    reason to know of the injury which is the basis of the action").

8         Nor is Plaintiff entitled to relief under the "related acts" continuing violation theory. That

9    theory allows a plaintiff to seek relief for events outside of the limitations period if a series of

10    violations are related closely enough to constitute a continuing violation, and if one or more of the

11    violations falls within the limitations period. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir.

12    2001). The continuing violation theory has the "effect of . . . restart[ing] the statute of

13    limitations," *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1189–90 (9th Cir. 1984), when there are

14    "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual

15    harassment or repeated discriminatory employment practices," *Sisseton–Wahpeton Sioux Tribe v.*

16    *United States*, 895 F.2d 592, 597 (9th Cir. 1990).

17         The December 2012 assault is neither a repeated instance, nor a continuing act, of the same

18    nature as the breach of the plea agreement. Plaintiff does not cite the assault as an objective of the

19    conspiracy, and the assault was committed by an unidentified inmate who is not alleged to have

20    been involved in the conspiracy. At most, the December 2012 assault could be viewed as a

21    continuing *impact* from the alleged injury (breach of the plea agreement), rather than the last in a

22    series of similar violations. *See Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979)

23    ("The proper focus is upon the time of the . . . acts, not upon the time at which the consequences

24    of the acts became most painful."). The Ninth Circuit has "repeatedly held that a 'mere continuing

25    *impact* from past violations is not actionable.'" *Knox*, 260 F.3d at 1013 (quoting *Grimes v. City*

26

27    Cir. 1998) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)). The Court notes,

28    however, that the new allegations in Plaintiff's opposition merely provide specifics regarding the

   details of the conspiracy, which are not relevant to whether Plaintiff's claims are timely.

*and County of San Francisco*, 951 F.2d 236, 238–39 (9th Cir. 1991) (quotation marks omitted) (finding that attorney-plaintiff's cause of action arose when she was informed of the revocation of her legal mail and visitation privileges and that the prison's subsequent and repeated denials of plaintiff's privileges was merely a continuing effect of the revocation and did not give rise to new causes of action).

Accordingly, accepting as true all material allegations in the complaint related to DAs Lowe, Wiley, and Ford, and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff's claims against DAs Lowe, Wiley, and Ford are time-barred by the statute of limitations.

### 2) Claims against Deputy Turner

Plaintiff claims that Deputy Turner was indifferent to his safety when he allowed Plaintiff to be transported back to jail on the same bus as Evans. FAC at 3 and 23. Plaintiff also makes the general claim that all defendants conspired to deprive him of his lawful contract with the DA's Office. *Id.* at 13. However, Plaintiff fails to allege any facts that connect Deputy Turner to the alleged conspiracy. Plaintiff does not directly address the timeliness of his two § 1983 claims against Deputy Turner.

Construing the facts in the light most favorable to Plaintiff, the Court finds that neither claim is timely. While it is unclear when Plaintiff was on the transport bus with Evans, the incident certainly took place prior to July 2009, when DA Wiley withdrew the plea bargain. Accordingly, by July 31, 2009, Plaintiff knew of Deputy Turner's deliberate indifference to his safety. The statute of limitations thus ran out on this claim no later than July 31, 2013, over a year before Plaintiff filed this instant action.

Assuming arguendo that Deputy Turner was involved in the alleged conspiracy to breach the plea agreement,[12] Plaintiff learned that the plea agreement had been breached by September

---

[12] There is no allegation that Deputy Turner was aware that Plaintiff was negotiating a plea bargain. Even assuming arguendo that Deputy Turner assumed the existence of a plea bargain because Plaintiff informed Deputy Turner that he was testifying against Evans, there are no facts alleged that indicate that Deputy Turner kept Evans and Plaintiff on the same bus in order to effect a breach of the plea bargain.

United States District Court
Northern District of California

1   21, 2010 at the latest, as discussed *supra* in Section II.A.1, rendering Plaintiff's conspiracy-related

2   claim against Deputy Turner untimely.

3                   3)      Claims against Alameda County Entities

4           Plaintiff alleges that Alameda County conspired to defraud him of his plea bargain contract

5   with the DA's Office.  FAC at 13.  Again, as discussed *supra* in Section II.A.1, if employees of

6   the Alameda County Sheriff's Department, the Alameda County DA's Office, and Alameda

7   County were part of the alleged conspiracy with DAs Lowe, Wiley, and Ford to breach the plea

8   bargain, the statute of limitations for any claims that arose out of this conspiracy expired on

9   September 21, 2014, prior to this action being filed.  Any claims against the Alameda County

10  entities are therefore untimely.

11      **B.      Absolute or Qualified Immunity**

12          Because the Court has found that Plaintiff's claims are untimely, the Court declines to

13  address Defendants' alternative arguments that DAs Lowe, Wiley, and Ford are entitled to

14  absolute or qualified immunity for their actions.

15      **C.      Failure to State a Claim**

16          Because the Court has found that Plaintiff's claims are untimely, the Court declines to

17  address whether Plaintiff has alleged sufficient facts to state a claim against Alameda County, and

18  whether Plaintiff has alleged sufficient facts to state a claim against DAs Wiley and Ford.

19  **III.    Unserved Defendant Judith Browne**

20          On June 22, 2015, the Court ordered service on Judith Browne.  *See* Docket No. 13 at 4–5.

21  On July 31, 2015, the summons for defendant Browne was returned unexecuted with the following

22  remark by the United States Marshal: "Spoke with property manager. House is a rental. Browne

23  moved out late 2014. Location unknown."  *See* Docket No. 24.  On September 1, 2015, the Court

24  ordered Plaintiff to either effect service on defendant Browne, or submit to the Court sufficient

25  information to identify and locate defendant Browne such that the Marshal is able to effect service.

26  *See* Docket No. 30 at 2.  Plaintiff was cautioned that the failure to do so by October 31, 2015

27  would result in dismissal of defendant Browne without prejudice pursuant to Rule 4(m) of the

28  Federal Rules of Civil Procedure.  *See id.*  On January 12, 2016, the Court granted Plaintiff an

United States District Court
Northern District of California

1    extension of time to February 20, 2016, to effect service on defendant Browne.  *See* Docket No.

2    39.  The deadline has passed, and Plaintiff has neither effected service on defendant Browne, nor

3    has he provided sufficient information to allow the Marshal to effect service.  Accordingly,

4    defendant Browne is dismissed from this action without prejudice pursuant to Rule 4(m) of the

5    Federal Rules of Civil Procedure.

6                                                    **CONCLUSION**

7              For the foregoing reasons, the motion to dismiss filed by Alameda County, Deputy Turner,

8    and district attorneys Lowe, Wiley, and Ford (Docket No. 22) is GRANTED.  As a general rule,

9    leave to amend a complaint that has been dismissed should be freely granted.  Fed. R. Civ. P.

10   15(a).  However, leave to amend may be denied when the Court "determines that the pleading

11   could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127

12   (9th Cir. 2000).  Here, the face of the FAC reveals that the claims are time-barred.  Accordingly,

13   further amendment would be futile, and this action is DISMISSED WITH PREJUDICE.  *See*

14   *Calhoun v. Dep't of Corr.*, 402 F. App'x 196, 197, 2010 WL 4269583 at *1 (9th Cir. 2010)

15   (finding that district court properly dismissed action without leave to amend because it was clear

16   from the face of the complaint that the claims were time-barred).

17             Plaintiff's summary judgment motion (Docket No. 27) is DISMISSED as moot.  Judith

18   Browne is DISMISSED from this action without prejudice pursuant to Rule 4(m) of the Federal

19   Rules of Civil Procedure.

20             The Clerk shall enter judgment and close the file.

21             **IT IS SO ORDERED.**

22   Dated: 3/31/2016

23

24   HAYWOOD S. GILLIAM, JR.
     United States District Judge

25

26

27

28

13